## Lockhart *et al. versus* Stevenson.

1. Wootten, having failed, sold by bill of sale and delivered his stock, &c., to Lockhart in consideration of certain claims held against him by Lockhart and a part of his other creditors, who had previously made an arrangement amongst themselves to divide the proceeds *pro ratâ*.    The jury found that the transaction was bonâ fide.    *Held*, that the bill was not an assignment for creditors which required to be recorded.

2. The fact that Lockhart was acting for the other creditors as well as for himself did not convert the sale into an assignment for creditors.

3. If there was a trust between Lockhart and creditors, it was not created by Wootten.

4. The fact that some of the claims were not due did not affect the validity of the sale.

February 9th 1869.    Before Thompson, C. J., Agnew and Williams, JJ.    Read, J., at Nisi Prius.    Sharswood, J., absent.

Error to the District Court of *Philadelphia:* No. 195, to January Term 1869.

This was a sheriff's interpleader, entered to March Term 1864, in which Charles Lockhart and William Frew, trading as Lockhart & Frew, were claimants and plaintiffs, and James H. Stevenson defendant.

The goods in question had been levied on as the property of George W. Wootten, under a fi. fa. issued at the suit of Stevenson against Wootten.

The evidence showed that Wootten was in business in Philadelphia as a dealer in oil and lamps, and was burned out early in 1864.    With the money received for insurance he made settlements with a number of his creditors.    He still owed other debts, some of his creditors being in Pittsburg; amongst the rest, Lockhart & Frew (to whom he owed above $8000), and Stevenson. Stevenson brought suit against him.    Wootten then sent Robert F. Mustin, his book-keeper, to Pittsburg to endeavor to effect a

[Lockhart v. Stevenson.]

settlement with his creditors there; his proposition was to give them his assets and the stock he had left, if they would surrender their claims. Three creditors stood out. Mr. Frew came to Philadelphia and Wootten made a settlement with him. Frew held a number of claims, consisting of Wootten's notes and acceptances to other creditors, besides Lockhart & Frew's own claim; the whole amounting to above $24,000. In consideration of these claims, some of which were not due, Wootten sold to Lockhart & Frew all his stock and assets, and executed and delivered to them the following bill of sale:—

"Know all men by these presents, that I, George W. Wootten, for and in consideration of the sum of $24,597, do hereby bargain, sell and deliver unto Charles Lockhart and William Frew, copartners as Lockhart & Frew, the goods and merchandise described and enumerated in the foregoing schedule, contained in the store No. 127 South Second street in the city of Philadelphia. Also I hereby assign, transfer and set over unto the said Lockhart & Frew all the claims and demands which I have against any person or persons, and all the moneys due to me from any person or persons, for goods and merchandise sold and delivered by me to them and each of them, to and for the only proper use and behoof of them the said Lockhart & Frew, for ever. And I hereby authorize and empower the said Lockhart & Frew to proceed in all lawful ways and by all lawful means in my name, but for their use and benefit, to collect, recover and receive all the aforesaid moneys. And I promise to execute and deliver to the said Lockhart & Frew at any times hereafter upon their request, such other and more formal instruments of writing as may be necessary the more effectually to carry out the objects aforesaid.

GEORGE W. WOOTTEN.

Philadelphia, March 16th 1864."

The goods mentioned in the schedule referred to in the bill amounted to $4313.38, and consisted of articles of merchandise in the business in which he had been engaged.

Mustin testified as to the delivery of the goods to the plaintiff, the removal of Wootten and other facts bearing on the bona fides, &c., of the transaction. He testified: "Lockhart & Frew gave to Mr. Wootten certain notes and acceptances of his for the goods; they amounted to about $23,000; they were remitted from Pittsburg. Lockhart & Frew held the notes and drafts; they had been given for actual indebtedness of Mr. Wootten in the course of his business for the amounts mentioned in them. Lockhart & Frew gave up those notes and drafts to Mr. Wootten for the goods mentioned in the bill of sale.

"I was Mr. Wootten's book-keeper; at his instance I went to Pittsburg to see the creditors and saw them, and Lockhart &

11 P. F. SMITH—5

[Lockhart *v.* Stevenson.]

Frew. I helped negotiate this sale. I told them to hurry up and make a settlement, and that I was sent to urge them to act; that Mr. Wootten had some goods left to settle with. I told them that Mr. Stevenson was pushing him, and that if they wanted to settle with Mr. Wootten they must hurry up or Stevenson would be on the goods. A part of the notes and drafts were held by Lockhart & Frew, and a part of them by others in Pittsburg. The offer made to Lockhart & Frew was that they should take the remnant of Mr. Wootten's stock and his assets, and give up to him the notes and acceptances. Lockhart & Frew made an arrangement with the other creditors in Pittsburg. They were to sell the goods and divide *pro rata* with the Pittsburg creditors. Stevenson was to be left out.

"Mr. Frew employed me to take possession of the goods for Lockhart & Frew.

"I remitted to Lockhart & Frew the moneys I received from sales of the goods as I accumulated it. I corresponded with Lockhart & Frew, but not with any other of the Pittsburg creditors. I did not consult Wootten in relation to notes for a sale of goods to Perrine & Dryden; they were drawn to my order I think; they were not drawn to Mr. Wootten's order.

"I closed up the business in July according to Lockhart & Frew's order. There may have been some few things in the store that were not mentioned in the bill of sale to Lockhart & Frew. I can remember that there were two chairs and one stool that are not in the bill of sale.

"I remitted the proceeds of sales to Lockhart & Frew whenever they amounted to about $500; it was by checks on the Corn Exchange Bank."

The checks amounted to $3110. Mustin further testified that goods to the value of about $1200 were sent to Pittsburg.

Wootten testified: "Lockhart & Frew paid me by notes and acceptances. They were my creditors. They paid in settlement for the Pittsburg creditors. They acted for other creditors too. The transaction did not cover all the creditors. It covered one Philadelphia party. I left out Stevenson. I knew he was pushing me, and wanted to get ahead of him. I wanted to avoid the sheriff. The goods remained in the store. Mustin had charge of them. He was my book-keeper before the sale, and remained in possession afterwards."

The notes and acceptances to a number of different creditors, being the consideration for the transfer of the goods, were given in evidence.

The court (Hare, P. J.) left it to the jury to determine whether the transaction was a fair one, and the consideration paid; and whether the vendees took actual possession at the time of the transfer, and continued to hold it against the vendor; and reserved

[Lockhart v. Stevenson.]

the question whether the bill of sale taken in connection with the oral evidence of sale, under which the plaintiffs claimed title to the goods, was an assignment in trust for the benefit of creditors, and void because not recorded.

The jury found for the plaintiffs. The court entered judgment for the defendant upon the reserved question.

The plaintiffs took a writ of error, and assigned for error the entry of judgment on the reserved question.

*W. S. Price*, for plaintiffs in error.—The transaction was a sale and delivery, and good, although for certain specified creditors: York Co. Bank *v.* Carter, 2 Wright 446. It was not an assignment for the benefit of creditors within the act. Wootten created no trust: Ridgway *v.* Stewart, 4 W. & S. 391; Fallon's Appeal, 6 Wright 235; Beans *v.* Bullitt, 7 P. F. Smith 221; Chaffees *v.* Risk, 12 Harris 432; Henderson's Appeal, 7 Casey 502.

*W. W. Wiltbank* and *W. E. Whitman*, for defendant in error. —The transaction was, according to the intent of the parties, as well as in its legal effect, an assignment for themselves and other creditors of Wootten: Bittenbender *v.* Sunbury & E. Railroad, 4 Wright 270; McCulloch *v.* Hutchinson, 7 Watts 434; Reigart's Appeal, 4 Barr 477; Watson *v.* Bagaley, 2 Jones 164; Lucas *v.* Sunbury & E. Railroad, 8 Casey 461; Driesbach *v.* Becker, 10 Id. 152; Fallon's Appeal, *supra;* Vallance *v.* Insurance Co., 6 Wright 444. The neglect to record the instrument at the proper time rendered it void: Englebert *v.* Blanjot, 2 Whart. 240; Seal *v.* Duffy, 4 Barr 274. The assignment was within the Act of Assembly, although in favor of only *some* creditors: Flanagin *v.* Wetherill, 5 Whart. 286; Reigart's Appeal, 4 Barr 477; Vallance *v.* Ins. Co., 6 Wright 444.

The opinion of the court was delivered, May 11th 1869, by

WILLIAMS, J.—If the bill of sale, executed by Wootten, was an assignment of the goods in controversy to Lockhart & Frew, in trust for themselves and the other creditors whom they represented, it ought to have been recorded; and as it was not, it would necessarily follow that it was null and void under the express provision of the Act of 24th March 1818, and that the judgment was rightly entered in favor of the defendant on the reserved question. But if it was not an assignment, but an absolute sale of the goods for a full consideration paid by the vendees, then the judgment ought to have been entered in favor of the plaintiffs on the verdict. Whether it was an assignment, or a sale, the jury have found that the transaction was a fair one—that the consideration was paid—and that the vendees took actual possession of the property at the time of the transfer, and continued to

[Lockhart *v.* Stevenson.]

hold it against the vendor; and that it was not made with an intent to defraud, hinder or delay his creditors. What, then, was the character of the transaction? Was it a sale or an assignment? The bill of sale, on its face, imports a sale, and not the creation of a trust for the benefit of creditors. If it was, in fact, an assignment, it must be shown by other evidence than that furnished by the paper itself. Is there, then, any extrinsic evidence that the real character of the transaction was different from that expressed in the bill of sale? We have not been able to discover any in the record. On the contrary, the evidence sent up with the bill of exceptions shows that Lockhart & Frew, acting for themselves and as the agents of the other creditors, purchased of Wootten the property mentioned and referred to in the bill of sale, in consideration of their surrender of the notes and drafts, of which he was the maker or drawer, amounting to the sum of $24,597. The fact that Lockhart & Frew were acting for themselves and as agents of the other creditors in making the purchase, did not change the nature of the transaction and convert what would otherwise have been a sale into an assignment for their benefit. As between the parties it was a sale, consummated by the delivery of the goods and the payment of the consideration; and as soon as the vendees surrendered the notes and drafts, in payment of the consideration, they ceased to be creditors of the vendor. There may have been a trust as between the firm of Lockhart & Frew and the other creditors for whom they were acting, but it was not created by the vendor, but arose from the fact that the goods were purchased with their joint means and for their joint benefit. Not only the bill of sale, but all the evidence in the case shows that the transaction was intended as a sale, and not as an assignment in trust for creditors, and as it was fair and the consideration fully paid, the plaintiffs were entitled to the goods—and the judgment ought to have been entered in their favor on the verdict. The fact that some of the notes were not due, does not affect the validity of the sale, if made with an honest and lawful intent, as the jury have found.

Judgment reversed, and judgment for the plaintiffs on the verdict with costs.